HONORABLE RONALD B. LEIGHTON

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| GARY MESMER, an individual,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>CHARTER COMMUNICATIONS, INC., a Delaware corporation, CHARTER COMMUNICATIONS LLC, a Delaware Limited Liability Company; and CHARTER COMMUNICATIONS HOLDING COMPANY LLC, a Delaware Limited Liability Company,<br><br>　　　　　Defendants. | CASE NO. 3:14-cv-05915-RBL<br><br>ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT<br><br>DKT. #31 |

THIS MATTER is before the Court on Defendant Charter Communications' Motion for Summary Judgment or for Partial Summary Judgment. [Dkt. #31]. Plaintiff Gary Mesmer is a former Charter employee suffering from anxiety, depression, diabetes, and Post Traumatic Stress Disorder. Mesmer worked at Charter's Vancouver call center. In late November 2011, Mesmer got into a heated argument with his supervisor, April Moudy, which she claims left her scared and in tears. Several days later, Mesmer hung up on 38 callers in a single day and received a reprimand for recent poor attendance. He was suspended, then terminated just a few days later.

1       Mesmer sued almost three years later. He claims Charter failed to accommodate his
2  disabilities, interfered with his efforts to take leave related to them, made him sit near a co-
3  worker who sexually harassed him, and otherwise violated his rights as an employee. He also
4  alleges Charter wrongfully terminated him in retaliation for complaining about sexual
5  harassment and because of his disability. He asserts claims under the Family and Medical Leave
6  Act (FMLA), the Washington Family Leave Act (WFLA), and the Washington Law Against
7  Discrimination (WLAD).

8       Charter seeks summary judgment, arguing it fired Mesmer for cause, based on the 38
9  disconnected calls and the fight with his supervisor. It argues there is no evidence supporting
10 Mesmer's current claims that he was the victim of discrimination or that he was fired for
11 discriminatory or retaliatory reasons. It also argues that several of Mesmer's claims are time-
12 barred—both because the alleged sexual harassment occurred more than three years prior to the
13 filing of his complaint and because any interference with Mesmer's ability to take leave was not
14 willful, which would extend the statute of limitations by a year.

15                         **BACKGROUND**

16      Although Mesmer started working for Charter in 2005, the incidents giving rise to this
17 lawsuit occurred in 2011. For most of 2011, Charter's seating chart assigned Mesmer to a
18 workstation across from coworker Pedro Sena. Mesmer alleges Sena sexually harassed him in
19 early 2011 by inviting him to his home to watch European erotica and telling Mesmer not to
20 knock homosexuality until he tried it. He also alleges Sena once invited him to watch erotica
21 several years before.

22      In May 2011, Mesmer told Moudy that Sena's comments made him feel uncomfortable
23 and asked her to reassign his workstation. Moudy declined his request, explaining it was against
24

her practice to move employees simply because they asked. She told Mesmer he could swap workstations with a coworker if they consented, but Mesmer was unable to find anyone willing to do so. Mesmer claims he repeated his request to Moudy and to her supervisor, Lola Bozovich, over the next several months, to no avail. In September 2011, Moudy told Mesmer he could sit at any vacant desk in the call center during his shifts. Charter officially reassigned Mesmer to a workstation away from Sena in early November 2011. Mesmer conceded he was satisfied with the new arrangement.

      Mesmer and Moudy's working relationship soon began to sour. On November 30, 2011, Mesmer sent a computer message to Moudy, complaining about a sales representative. Moudy did not immediately take Mesmer's side, and he became upset: "Just take someone elses [sic] side and Ignore the 5 years I've been doing this." *See* Dkt. #32 at p. 197. He ended the chat by writing "I quit!" and "Consider this my 2 weeks' notice." *See id.* at p. 198–200.

      The situation devolved into a face-to-face confrontation. Moudy described Mesmer as "red in the face, frustrated, loud, vocal, and combative" in this interaction, which he claims was due to his PTSD. Mesmer claims Moudy herself was red in the face and appeared anxious. Moudy went to Bozovich after the argument, complaining that Mesmer was unprofessional, aggressive, and threatening. Moudy claims she was in tears as a result of the interaction, and that she became fearful of Mesmer for months. Mesmer claims the disagreement made him uncomfortable and elevated his PTSD symptoms, causing him to go home early.

      Mesmer met with Bozovich about Moudy two days later. He reported that he was unhappy with Moudy and intended to file a complaint. He also told Bozovich that he intended to take leave to handle his PTSD symptoms. Mesmer claims he visited Charter's HR department after the meeting to request FLMA paperwork, but was told that the office did not give out

physical copies; instead, HR directed him the company's internal website where the forms were located. Mesmer had previously taken leave approved by Charter on two occasions, including once to care for his sick son about a month prior to his termination. Mesmer alleges he attempted to find the paperwork online over the next few days but could not because he did not know which documents he needed. He never submitted the FMLA paperwork.

On December 5, 2011, Mesmer received a verbal reprimand for attendance problems, which he admits was warranted. His supervisors warned him that future attendance issues could lead to his termination. That same day, Bozovich received complaints that Mesmer was repeatedly hanging up on employee callers. She learned Mesmer had prematurely disconnected 38 calls that day. Mesmer does not dispute this, but instead alleges that his severe anxiety symptoms forced him to disconnect calls to take additional breaks. Mesmer claims he was anxious, in part, because he forgot to take his diabetes medication. He alleges that he was not on anxiety medication at the time and did not leave work because he had just been reprimanded for his attendance. He nevertheless admits that he took numerous breaks.

The next day, Bozovich and Charter's Vancouver call center director, Scott Carroll, met with Mesmer to discuss his performance. Mesmer admitted to disconnecting the calls, attributing this to his anxiety. Mesmer was suspended with pay and then terminated. In its termination report, Charter cited Mesmer's 38 dropped calls and unprofessional behavior with Moudy as reasons for his dismissal.

Mesmer sued in October 2014. He alleged Charter violated the FMLA and WFLA by interfering with his ability to take leave for his PTSD. He also alleges four violations of the WLAD: (1) Charter failed to provide reasonable accommodations to handle Mesmer's PTSD both independently and due to Sena's exacerbations, (2) Charter discharged him because of his

PTSD, (3) Charter failed to act on Sena's sexually harassing comments directed at Mesmer, and (4) Charter fired Mesmer in retaliation for complaining about Sena.

Charter seeks summary judgment on Mesmer's FMLA and WFLA claims. Charter argues that they are time-barred because even if it interfered with Mesmer's leave, which it strenuously denies, there is no evidence that it did so willfully. Thus, it claims, the limitations period for this claim is two years and Mesmer's claim is untimely as a matter of law.

Charter also argues the claims are substantively without merit for two reasons: (1) Mesmer's condition did not qualify him for leave under the Acts, and (2) Charter's failure to act, after Mesmer had merely stated an intention to take leave, does not amount to interference as a matter of law. Charter argues that Mesmer's failure to accommodate claim is similarly time-barred and that he cannot show his PTSD "substantially limited" his job performance, an essential element of his claim. Charter also claims it did provide reasonable accommodations to Mesmer by allowing him to switch seats away from Sena on multiple occasions, which he did not do.

Charter argues Mesmer's disability (termination) discrimination claim fails because he was not performing satisfactory work prior to his discharge. It asserts that Mesmer's sexual harassment claim is both time-barred, because the comments occurred more than three years before the lawsuit, and without merit, because no reasonable fact finder could determine Sena's comments objectively abusive. It claims that his sexual harassment retaliation claim fails because there is no causal connection between his termination and his earlier reports of Sena's conduct—rather, Charter argues he was fired for legitimate business reasons due to his poor performance.

Mesmer argues that his FMLA and WFLA claims are not time-barred because Charter's decision not to respond to his leave request was willful interference with that leave, making the

limitations period three years, not two. He argues that he was suffering from two serious health conditions—diabetes and PTSD—that would have qualified him for leave.

Mesmer claims that Charter failed to accommodate his PTSD because it did not take affirmative steps to remove him from Sena after he complained that the sexual harassment was exacerbating his PTSD. He also argues that Charter could have taken other actions, including transferring him to a different department or allowing him time off, to accommodate his PTSD. He claims that Charter had no legitimate reason to discharge him, and instead did so because of his disability.

Mesmer contends his sexual harassment claim is valid because, as a victim of childhood sexual abuse, he found Sena's comments to be abusive. He also contends his claim is not time-barred because he complained to his supervisors about Sena less than three years prior to filing this case. He argues that the timing of his termination raises the inference of retaliation against him due to his complaints about Sena.

## DISCUSSION

**A.     Standard of Review.**

Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In determining whether an issue of fact exists, the Court must view all evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *See Anderson Liberty Lobby, Inc.*, 477 U.S. 242, 248–50 (1986). A genuine issue of material fact exists where there is sufficient evidence for a reasonable fact finder to find for the nonmoving party. *See id.* at 248.

1  The inquiry is "whether the evidence presents a sufficient disagreement to require submission to
2  a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id*. at 251–52.
3        The moving party bears the initial burden of showing that there is no evidence which
4  supports an element essential to the nonmovant's claim. *See Celotex Corp. v. Catrett*, 477 U.S.
5  317, 322 (1986). Once the movant has met this burden, the nonmoving party then must show that
6  there is a genuine issue for trial. *See Anderson*, 477 U.S. at 250. The nonmoving party may not
7  rely on the mere allegations in the pleadings in order to preclude summary judgment, nor may it
8  merely state that it will discredit the moving party's evidence at trial. *See T.W. Elec. Serv., Inc. v.*
9  *Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). Instead, the nonmoving party
10 must provide "specific facts" showing there is a genuine issue for trial. *See id.*; *See also* Fed. R.
11 Civ. P. 56(e). If the nonmoving party fails to establish the existence of a genuine issue of
12 material fact, "the moving party is entitled to judgment as a matter of law." *Celotex*, 477 U.S. at
13 323–24.
14 **B.      FMLA and WFLA Interference Claims.**
15       Mesmer claims he spoke to Bozovich and Charter's HR department on December 2, 2011
16 about his need to take FMLA leave to handle his PTSD symptoms. He argues Charter willfully
17 prevented him from taking FMLA leave by refusing to provide him the necessary forms,
18 discouraging him from taking leave by reprimanding him on December 5 for poor attendance,
19 and terminating him for his work performance related to his need to take leave. He argues
20 Charter was obligated to help him take leave after he stated a desire to take it on December 2.
21       Charter argues that Mesmer's identical FMLA and WFLA claims are time-barred
22 because, even if there is a question of fact about its interference, there is no evidence in support
23 of Mesmer's claim that any interference was willful. It argues that Mesmer's mere mention to
24

1  Bozovich about his desire for leave does not mean Charter's failure to take additional action
2  constitutes willful interference. It also argues Mesmer's claim that Charter discouraged him from
3  leave by reprimanding him for his attendance fails because Mesmer himself admitted in his
4  deposition that the admonishment was justified. Alternatively, Charter seeks summary judgment
5  on the claims, arguing that Mesmer was not suffering from a "serious health condition" that
6  would qualify him for FMLA leave in any event. Charter further argues that it did not interfere
7  with Mesmer's ability to request leave and that it terminated him for legitimate business reasons,
8  not to prevent him from taking time off.

9    The Washington Family Leave Act "mirrors its federal counterpart and provides that
10 courts are to construe its provisions in a manner consistent with similar provisions of the
11 FMLA." *Crawford v. JP Morgan Chase NA*, 983 F. Supp. 2d 1264, 1269 (W.D. Wash. 2013).
12 The general limitations period for an FMLA claim is two years "after the date of the last event
13 constituting the alleged violation." 29 U.S.C. § 2617(c)(1). Where a violation is willful, however,
14 the limitation period is extended to three years. 29 U.S.C. § 2617(c)(2). Courts have looked to
15 the Supreme Court's definition of "willful" as applied in the context of the Fair Labor Standards
16 Act ('FLSA') to analyze willful violations of the FMLA. *Shulman v. Amazon.com*, Inc., No.
17 C13–247RSM, 2013 WL 2403256, at *2 (W.D.Wash., May 30, 2013). Under the FLSA, an
18 employer acts "willfully" when he or she "either knew or showed reckless disregard for the
19 matter of whether its conduct was prohibited by the statute." *McLaughlin v. Richland Shoe Co.*,
20 486 U.S. 128, 133 (1988). "If an employer acts unreasonably, but not recklessly, in determining
21 its legal obligation ... it should not be [considered willful]." *Id.* at 135 n. 13.

22   Although Mesmer previously alleged facts sufficient to survive a Motion to Dismiss as to
23 whether these claims are time-barred, he has not met his higher summary judgment burden of
24

1 providing evidence from which a reasonable fact finder could find willful interference. In fact,
2 the evidence demonstrates the opposite—that Charter pointed Mesmer in the right direction once
3 he stated his intention to take leave, but that he did not follow through with the necessary
4 paperwork. This occurred even though Mesmer had successfully navigated the same paperwork
5 trail twice previously, including once just several weeks before. While Charter did not take
6 affirmative steps to inquire about Mesmer's desire for leave, its inaction was at the very worst
7 unreasonable—no reasonable fact finder could determine that it was reckless or willful.
8 Mesmer's FLMA and WLMA claims are therefore subject to the two-year limitations period,
9 making his claims time-barred because he did not file suit within that period.
10       Furthermore, and in any event, his claims fail substantively because he has not presented
11 evidence demonstrating his PTSD qualified as a "serious health condition" that would allow him
12 leave under the FMLA. *See Marchisheck v. San Mateo Cty.*, 199 F.3d 1068, 1075 (9th Cir. 1999)
13 (holding that FMLA leave, with exceptions that do not apply here, requires employee or his
14 family member to be suffering from a "period of incapacity" rendering him unable to work,
15 attend school, or perform regular daily activities). Charter's Motion for Summary Judgment on
16 Mesmer's FMLA and WFLA interference claims is GRANTED and those claims are
17 DISMISSED with prejudice.

18 **C.     WLAD Failure to Accommodate Claim.**

19       Mesmer alleges Charter failed to accommodate his PTSD by not allowing him to take
20 breaks to manage his symptoms and by not moving him away from Sena.
21       Charter argues this claim is time-barred because Mesmer sued more than three years after
22 he asked to be moved away from Sena. It also argues that no accommodation was required
23 because Mesmer was not suffering from a condition that substantially limited his job
24

performance, as is required under the WLAD. Charter furthermore contends that Moudy did, in fact, accommodate Mesmer's request to change seats by allowing him to sit at any open desk and trade seats with a coworker, which he did not do.

Mesmer argues this claim is not time-barred because he "continued to seek accommodation up until the week he was terminated." *See* Dkt. #37, p. 2, at 22. He contends Charter could have, but did not, accommodate his PTSD by determining the extent of his disability and either providing him time off or transferring him to a different department. Mesmer alleges that instead of doing that, the company terminated him. He further argues that Charter failed to accommodate his need to be moved away from Sena, and that allowing him to swap with a willing coworker or take a vacant seat was insufficient.

The WLAD prohibits an employer from discharging any employee "because of ... the presence of any sensory, mental, or physical disability." RCW 49.60.180(2). To establish a prima facie case of failure to reasonably accommodate a disability ... a plaintiff must show that (1) the employee had a sensory, mental, or physical abnormality that substantially limited his or her ability to perform the job; (2) the employee was qualified to perform the essential functions of the job in question; (3) the employee gave the employer notice of the abnormality and its accompanying substantial limitations; and (4) upon notice, the employer failed to affirmatively adopt measures that were available to the employer and medically necessary to accommodate the abnormality. *Davis v. Microsoft Corp.*, 149 Wash. 2d 521, 70 P.3d 126, 131 (2003) (citations omitted). In order to satisfy the test's first prong, an employee's condition must substantially, and not only somewhat, limit his ability to perform his job. *See* RCW 49.60.040(7)(e) (for the purposes of qualifying for reasonable accommodation in employment, "a limitation is not substantial if it has only a trivial effect"); *Becker v. Cashman,* 128 Wash. App. 79, 114 P.3d

1210, 1213 (2005) (determining employee's need to take brief breaks to slow his heart rate, short of continuous sleeping on job or absence from work, did not "substantially limit his ability to do his job"); *Roeber v. Dowty Aerospace Yakima*, 116 Wash. App. 127, 64 P.3d 691, 697–98 (2003) (rejecting accommodation claim, in part, by holding that plaintiff's migraines and depression did not substantially limit his ability to work, referencing employee's positive performance reviews and medical records stating his condition could be managed with medication). "Substantially limited" means "[u]nable to perform a major life activity that the average person in the general population can perform." *Toyota Motor Mfg., Ky., Inc. v. Williams*, 534 U.S. 184, 195–197 (2002). "Major life activities" are "those activities that are of central importance to daily life" like "walking, seeing and hearing." *Id.*; *See* 29 CFR § 1630.2(j) (1)(i)–(ii). The central inquiry in establishing the existence of a substantial limitation is whether an employee is able to perform tasks central to daily life and not those associated with his specific job duties. *Toyota Motor*, 534 U.S. at 200.

Mesmer has not presented evidence from which a reasonable jury could find that his PTSD substantially limited his capacity to perform his job or daily life activities, both by itself and because of Sena. While he asserts in his Declaration that the condition—combined with Sena's presence—caused him to leave work early, his own performance evaluations, pay raises, and limited disciplinary record show he was an effective worker for the majority of his years with Charter. Indeed, Mesmer himself cites this evidence to support the second element of this claim, that he was performing the essential functions of the job, as well as to support an element (that he was performing satisfactory work) of his disability discrimination claim. Mesmer's medical records also support the notion that his PTSD did not substantially limit his job performance—not only did he receive adequate performance evaluations (and pay raises) while

1  he was being treated for PTSD in 2009 and 2010, he also apparently performed adequately in
2  2011 when he was not seen by a doctor for his PTSD. He similarly makes no allegations
3  regarding—and provides no evidence supporting—an inability to perform daily life activities due
4  to his PTSD.

5        Because no reasonable fact finder could determine that Mesmer's PTSD substantially
6  limited his job performance or hindered his accomplishment of daily activities, Mesmer has
7  failed to establish evidence supporting an essential element of his failure to accommodate claim.
8  Charter's Motion for Summary Judgment on Mesmer's WLAD accommodation claim is
9  GRANTED and the claim is DISMISSED with prejudice.[1]

10 **D.  Wrongful Termination Claim.**

11       Mesmer claims Charter terminated him because of his disability. Charter argues that,
12 even viewed in the light most favorable to Mesmer, the evidence does not support the inference
13 that was performing satisfactory work at the time of his termination—an essential element of his
14 claim. Charter points to the 38 disconnected calls on December 5 and his heated argument with
15 Moudy on November 30. Mesmer also received a warning for his sporadic work attendance just
16 days before his termination. Charter furthermore cites Mesmer's informal resignation notice to
17 Moudy on November 30 in support of its argument that, even if the evidence did support a prima
18 facie claim, Mesmer was terminated for legitimate business reasons.

19       Mesmer cites his promotions, pay raises, and limited disciplinary record as evidence that
20 he was performing satisfactory work and that Charter terminated him without a legitimate
21 business reason. He argues that his termination was discriminatory if it was even partially

---

24     [1] Because the claim is dismissed, the parties' other arguments will not be addressed.

motivated by his disability. He does not, however, provide any evidence showing Charter had a discriminatory intent.

RCW 49.60.180 prohibits an employer from refusing to hire a person or otherwise discriminating against a person because a person has a disability, if the person is qualified to do the job. *Riehl v. Foodmaker, Inc.*, 152 Wash. 2d 138, 94 P.3d 930, 936 (2004). To establish such a prima facie disparate treatment case, the employee must produce evidence that he or she (1) was disabled, (2) was discharged, (3) was doing satisfactory work, and (4) was replaced by someone who was not disabled. *See id.* Once an employee makes his prima facie showing, the employer must produce evidence that the employment action was based on legitimate, nondiscriminatory reasons to rebut the presumption of discrimination. *See id* at 937. If the employer accomplishes this, the burden shifts back to the employee to produce evidence that the employer's stated reasons are a pretext for discriminatory intent. *See id.* Generally, when an employee produces his prima facie case plus evidence of pretext, a trier of fact must determine the true reason for the action. *Id.* If the employee fails to set forth a prima facie case of discrimination, the employer is entitled to prompt judgment as a matter of law. *Roeber*, 64 P.3d at 696. To survive summary judgment, Mesmer need show only that a reasonable judge or jury could find his disability was a substantial factor motivating Charter's adverse actions. *See Reihl*, 94 P.3d at 936.

Summary judgment is appropriate here because Mesmer has failed to present evidence demonstrating he was performing satisfactory work at the time of his termination, an essential element to his claim. Although the bulk of Mesmer's employment record at Charter shows satisfactory work, the record clearly demonstrates serious performance deficiencies—and an informal resignation—in the week prior to his termination. Mesmer has also failed to state a

1  prima facie disparate treatment claim because he has not proven, nor even alleged, that he was

2  replaced by somebody who is not disabled. Mesmer furthermore has not rebutted Charter's

3  legitimate business reason for his discharge by presenting evidence of pretext. There is simply no

4  evidence upon which a reasonable jury could find Mesmer's PTSD was a substantial factor

5  motivating Charter's decision to terminate his employment. Charter's motion for summary

6  judgment on this claim is therefore GRANTED. The claim is DISMISSED with prejudice.

**E.      Sexual Harassment Claim.**

Mesmer alleges Sena sexually harassed him by twice inviting him to his home to watch European erotica and also telling him to not knock homosexuality until he tried it. He argues Charter's failure to relocate his seat away from Sena, or take other corrective action, violated the WLAD.

Charter argues this claim is time-barred because the comments occurred in early 2011—more than three years before Mesmer sued. Charter also argues Sena's comments were not persistent or objectively abusive, citing a variety of cases holding that there was no hostile work environment in more egregious circumstances.

Mesmer argues that his claim is not time-barred because he continued to complain to his supervisors, and indicated he would complain "to Human Resources about [Moudy] up through December 2, 2011." Dkt. #37, p.17, at 14-16. He claims these acts occurred within three years of filing the lawsuit, meaning his claim is not time-barred. He also claims that, because he suffers from PTSD stemming from a childhood sexual incident, Sena's suggestive comments were severe enough to create an abusive working environment.

To state a prima facie sexual harassment claim, Mesmer must establish that: (1) the harassment was unwelcome, (2) the harassment was because of sex, (3) the harassment affected

1 the terms and conditions of his employment, and (4) the harassment is imputable to Charter. *Glasgow v. Georgia-Pac. Corp.*, 103 Wash. 2d 401, 693 P.2d 708, 711–12 (1985). In order to constitute unwelcome harassment, Mesmer must have not solicited or incited the conduct, and Mesmer must have regarded the conduct as undesirable or offensive. *See id* at 712. To prove Sena's comments were "because of sex," Mesmer must show that the conduct would not have occurred he been of a different gender. *See Crownover v. State ex rel. Dep't of Transp.,* 165 Wash. App. 131, 265 P.3d 971, 979 (2011); *see also Glasgow*, 693 P.2d at 712. There is no doubt Sena's comments were unwelcome, and it is reasonable to believe Sena would not have made the same comments to a woman. Thus, Mesmer has satisfied the first two elements of a prima facie sexual harassment claim.

A sexually objectionable environment affecting the terms and conditions of employment "must be both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so." *Faragher v. City of Boca Raton*, 524 U.S. 775, 787 (1998) (citation omitted); *see also Davis v. Fred's Appliance, Inc*., 171 Wash. App. 348, 287 P.3d 51, 58 (2012) (holding that plaintiff being called "Big Gay Al" three times was, while offensive, "casual, isolated, and trivial," and thus did not rise to an objectively abusive level). Courts consider the frequency of the alleged discriminatory conduct; whether it was physically threatening or humiliating, or a mere offensive utterance; its severity; and whether it unreasonably interfered with the plaintiff's work performance. *Sangster v. Albertson's, Inc*., 99 Wash. App. 156, 991 P.2d 674, 679 (2000). Whether the harassment at the work place is sufficiently offensive is a question to be determined with regard to the totality of the circumstances. *See Glasgow*, 693 P.2d at 712.

1   Although Sena's comments may have been subjectively discomforting and offensive to
2 Mesmer, no reasonable fact finder could determine they rose to an objectively abusive level.
3 Sena's comments, in light of the totality of the circumstances, were neither threatening,
4 humiliating, or severe, and his "don't knock it" statement was hardly harassing at all. Mesmer
5 also makes no allegation that these comments were persistent, which might make them
6 objectively abusive. Accordingly, Mesmer failed to present evidence creating a triable issue of
7 fact about whether Sena's conduct was abusive enough to unreasonably interfere with Mesmer's
8 employment. Charter's motion for summary judgment on Mesmer's sexual harassment claim is
9 GRANTED, and the claim DISMISSED with prejudice.

**F.    Sexual Harassment Retaliation Claim.**

Mesmer final cause of action alleges Charter terminated his employment because he complained about Sena's comments. Charter argues Mesmer has established no causal connection between his complaint about Sena's harassment in May 2011 and his termination six or seven months later. It further argues that, even if Mesmer could establish a prima facie retaliation claim, the company terminated his employment for non-discriminatory business reasons without pretext.

To establish a prima facie case of retaliation for a protected activity under either RCW 49.60 or Title VII, an employee must show that (1) he or she engaged in statutorily protected activity; (2) an adverse employment action was taken; and (3) there was a causal link between the employee's activity and the employer's adverse action. *Estevez v. Faculty Club of Univ. of Washington*, 129 Wash. App. 774, 120 P.3d 579, 589 (2005). If a plaintiff establishes a prima facie case of unlawful retaliation, the burden shifts to the defendant employer to offer evidence that the challenged action was taken for legitimate, non-discriminatory reasons. *Dawson v. Entek*

*Int'l*, 630 F.3d 928, 936 (9th Cir. 2011); *see also McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). If the employer provides a legitimate explanation for the challenged decision, the plaintiff must show that the defendant's explanation is merely a pretext for impermissible discrimination. *Dawson*, 630 F.3d at 936.

A causal link can be inferred from circumstantial evidence such as the employer's knowledge of the protected activities and the proximity in time between the protected activity and the adverse action. D*awson*, 630 F.3d at 936. The Supreme Court has held, however, that the temporal proximity between an employer's knowledge of the protected activity and an adverse employment action must be "very close." *See Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001) (holding that adverse action taken 20 months later "suggests, by itself, no causality at all"); *see also Clayton v. Donahoe*, 461 Fed. Appx. 574, 576 (9th Cir. 2011) (rejecting inference of causal connection between protected activity and adverse action that occurred at least ten months later); *Manatt v. Bank of Am., NA*, 339 F.3d 792, 802 (9th Cir. 2003) (determining no causal link between complaint and alleged retaliatory acts that occurred between six to twelve months later).

Mesmer has failed to provide any evidence from which a reasonable jury could find a causal link between his sexual harassment complaint and his termination six or seven months later. Even assuming his later complaints increased the temporal proximity so as to raise a claim with circumstantial evidence, Mesmer has also not presented any evidence from which a reasonable fact finder could conclude Charter's proffered business reasons were pretextual. This is particularly true in light of the fact that Charter had many months to retaliate against Mesmer after his May 2011 report but did not allegedly do so until December 2011, after Charter reassigned workstations to Mesmer's satisfaction.

1   Because Mesmer has failed to present (even circumstantial) evidence from which a
2   reasonable fact finder could conclude he was discharged because he complained about Sena's
3   comments, Charter's motion to dismiss Mesmer's sexual harassment retaliation claim is
4   GRANTED, and the claim DISMISSED with prejudice.

**CONCLUSION**

Charter's Motion for Summary Judgment [Dkt. #31] is GRANTED and Mesmer's claims against it are DISMISSED with prejudice.[2]

IT IS SO ORDERED.

Dated this 12th day of **April, 2016**.

                                Ronald B. Leighton
                                United States District Judge

---

[2] Because the case is dismissed, this Court will not address Charter's other arguments, including whether Mesmer willfully spoliated evidence.